IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| James KAILIE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 13-4792 (RBK/AMD) |
| | : | |
| v. | : | **Opinion** |
| | : | |
| Joseph E. SWEET, et al., | : | |
| | : | |
| Defendant(s). | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff James Kailie's ("Plaintiff") Complaint against Defendants Joseph E. Sweet and City of Brigantine ("Defendants") asserting claims of illegal search and seizure, excessive force, First Amendment retaliation, and *Monell* liability (Doc. No. 1). Currently before the Court is Defendants' Motion for Summary Judgment (Doc. No. 69). For the reasons expressed below, Defendants' Motion is **GRANTED IN PART**.

**I.     BACKGROUND**

   **A.     Factual Background**

Plaintiff is an African-American who was traveling with a passenger, Corey Redfern, from Maryland to New Jersey on December 3, 2012. Def.'s Statement of Undisputed Material Facts ("SMF") ¶¶ 1, 14.[1] Plaintiff was driving a truck. *Id.* ¶ 31. At 11:08 p.m., Defendant Sweet stopped Plaintiff in Brigantine, New Jersey, Defendant Sweet claims for speeding. Def.'s Motion

---

[1] To the extent the parties agree on particular facts, the Court will cite Defendant's Statement of Undisputed Material Facts and Plaintiffs' Counter Statement of Undisputed Material Facts. Otherwise, the Court will rely on the record for disputed facts.

for Summary Judgment ("MSJ") Ex. A, at 7. Defendants claim that Brigantine at the time maintained a "high visibility" police presence to prevent thefts and crime; many residents had evacuated following Hurricane Sandy, there had been break-ins, and people entering the City in trucks had stolen property. Def.'s MSJ Ex. B, at 96; Ex. E; Ex. D, at 33.

Upon being pulled over, Plaintiff asked the reason for the stop but claims Defendant Sweet did not answer. Pl.'s Opp'n, Kailie Cert. ¶¶ 12–14. He then presented a Maryland driver's license and Pennsylvania registration. Def.'s SMF ¶ 15. Defendant Sweet checked the license and did not find any infractions, suspensions, or warrants. Pl.'s SMF ¶ 11. Defendant Sweet then requested an insurance card. While Defendant claims Plaintiff was not carrying proof of insurance, Def.'s MSJ Ex. A, at 8, Plaintiff asserts he did not have time to locate it because Defendant Sweet demanded he exit the car, Pl.'s Opp'n Ex. A, at 82, 85, 90. According to Plaintiff, he offered to show a copy of the card on his mobile phone, offered to retrieve his destination address from the GPS, and called the car seller to corroborate his story, but Defendant Sweet refused to listen. *Id.* at 85, 90.

When Plaintiff asked Defendant Sweet why he needed to exit the vehicle, Defendant Sweet supposedly refused to answer. Pl.'s Opp'n Ex. B, at 26–27. Defendant Sweet did not see a weapon or perceive danger in the stop. Pl.'s Opp'n Ex. C, at 54. However, he nonetheless decided to conduct a patdown because he found Plaintiff's story suspicious. Def.'s MSJ Ex. A, at 14. Plaintiff's license was from a different state than the registration, he claimed to be purchasing a car late at night, he did not know the seller's name, and he said he was leaving the country the following morning. *Id.* Furthermore, Defendant Sweet was alone. *Id.*

The parties dispute the scope of the patdown. Defendant Sweet claims he checked the outside of Plaintiff's front and rear pockets as well as the waistband. *Id.* at 35. At no point did he

reach into Plaintiff's pockets, although he may have momentarily placed his hands on Plaintiff's buttocks. *Id.* By contrast, Plaintiff claims that Defendant Sweet forced Plaintiff to turn around, slammed him into the side of the car, shoved his head against the door jamb, and asked if he wanted to be hurt. Pl.'s Opp'n Ex. A, at 87, 90–91. Plaintiff also accuses Defendant Sweet of touching his scrotum, buttocks, anus, and inside and outside of his thighs. *Id.* at 87, 93. The frisk lasted ten seconds. Def.'s SMF ¶ 41.

Defendant Sweet did not discover any weapons or contraband. Pl.'s SMF ¶ 19. However, Plaintiff contends that Defendant Sweet nonetheless proceeded to search him two or three more times. Pl.'s Opp'n Ex. A, at 94–95. Defendant Sweet eventually directed Plaintiff to sit on the curb between his vehicle and the police vehicle, Def.'s SMF ¶¶ 45–46, Plaintiff claims by physically forcing him down by his shoulders and then pulling him back up, several times, Pl.'s Opp'n Ex. A, at 82, 99–100. Throughout the encounter, Defendant Sweet also allegedly reached for his weapon on multiple occasions, which made Plaintiff fear for his life. *Id.* at 109. Defendant Sweet, by contrast, claims he simply told Plaintiff to sit on the curb and never pushed or pulled him. Def.'s MSJ Ex. D, at 31–32. Plaintiff sat for about two to three minutes. *Id.*

Defendant Sweet then placed Plaintiff in the backseat of the police vehicle while he questioned Mr. Redfern. *See* Def.'s SMF ¶ 66. Defendant Sweet asserts he did this to protect Plaintiff from incoming cars. Def.'s SMJ Ex. A, at 15, 20–21. On his way into the car, Plaintiff bumped his head. While Defendants claim the bump was accidental, Def.'s SMJ Ex. D, at 42–43, Plaintiff states that Defendant Sweet shoved his head into the door while threatening, "I am going to arrest you and lock you up," Pl.'s Opp'n Ex. A, at 82, 101. Plaintiff estimates he was in the car for about ten minutes. *Id.* at 103. During this time, Defendant Sweet questioned Mr.

Redfern, who confirmed that he and Plaintiff were in Brigantine to purchase a car. Def.'s MSJ Ex. A, at 21; Ex. D, at 35.

While Plaintiff was in the back of Officer Sweet's vehicle, Officer William Stroby arrived at the scene. Def.'s SMF ¶¶ 73, 80. According to Plaintiff, Defendant Sweet stopped reaching for his weapon and handling him with violence upon the other officer's arrival. Pl.'s Opp'n Ex. A, at 107. Officer Stroby supposedly told Plaintiff that Defendant Sweet had been robbed two days prior, which is why he was behaving aggressively. *Id.* at 96, 104. At this point, Plaintiff received a citation, returned to his truck, and drove away. Pl.'s SMF ¶ 38. The entire encounter with Defendant Sweet lasted 31 minutes. Def.'s SMF ¶ 18.

Plaintiff claims several injuries as a result of the incident. He alleges bruises and swelling on his head. Pl.'s Opp'n Ex. A, at 102–04. Although he did not seek medical assistance that night, he later went to a doctor in Sierra Leone. Def.'s SMF ¶ 63; Pl.'s Opp'n Ex. A, at 101–03. In addition, his preexisting condition of post-traumatic stress disorder worsened. Pl.'s Opp'n Ex. A, at 145, 154. He has trouble sleeping, does not trust others, experiences physical anxiety around police cars, and avoids going outside. *Id.* at 145, 157–59. Plaintiff regularly attends therapy, as often as twice a week. *Id.* at 163.

### B. Procedural History

Plaintiff brought a Complaint, *pro se*, on August 9, 2013 (Doc. No. 1). On March 16, 2015, Plaintiff filed a Substitution of Attorney indicating that he had procured representation (Doc. No. 32). Defendants brought their first Motion for Summary Judgment on February 29, 2016 (Doc. No. 57). On July 27, 2016, the Court issued an Order denying the Motion for Summary Judgment without prejudice and instructing Plaintiff to amend the Complaint now that he had representation (Doc. No. 65). On August 5, 2016, Plaintiff filed an Amended Complaint

(Doc. No. 66), and on September 2, 2016, Defendants brought the present Motion for Summary Judgement (Doc. No. 69).

## II. LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587. However, the court should not adopt a version of the facts that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Blaylock v. City of Phila.*, 504 F.3d 405, 413 (3d Cir. 2007).

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. Amendment of the Complaint

Defendants ask the Court to reconsider its Order issued July 27, 2016 directing Plaintiff to amend the Complaint. Local Civil Rule 7.1(i) requires that motions for reconsideration be served and filed within 14 days of the order in question being entered. Here, more than 30 elapsed between the Order and Defendants' request for reconsideration. Defendants' request is untimely and the Court will not strike the Amended Complaint.

### B. Qualified Immunity

Defendants argue that Defendant Sweet has qualified immunity against the claims of illegal search and seizure and excessive force. Qualified immunity protects officers from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, "the [C]ourt must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Then, "if a violation could be made out on a favorable view of the parties' submissions, the [Court must] ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* A district court enjoys flexibility in deciding which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2000). The defendant bears the burden to prove qualified immunity. *See Thomas v.*

*Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006). The Court proceeds to analyze the qualified immunity defense in the below sections on illegal search and seizure and excessive force.

## C. Illegal Search and Seizure

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "To establish an unlawful search and seizure under the Fourth Amendment, a plaintiff must show that the defendant's actions: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances." *Williams v. Temple Univ.*, No. 04-831, 2011 WL 2516234, at *3 (E.D. Pa. June 21, 2011) (citing *Browner v. Cty. of Inyo*, 489 U.S. 593, 595–600 (1989)). Plaintiff here alleges that Defendant Sweet executed both an illegal search and seizure.

### 1. Search

#### a. Violation of A Right

Plaintiff asserts that Defendant Sweet conducted an illegal search by frisking Plaintiff, searching his pockets, touching his genital area, and searching him multiple times. A Terry stop requires two inquiries: (1) whether the officer had reasonable articulable suspicion to stop the person; and (2) whether the officer had reasonable and articulable suspicion to frisk the person. *United States v. Focareta*, 283 F. App'x. 78, 83 (3d Cir. 2008). Reasonable suspicion is an objective standard requiring "particularized justification." *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009). "Reasonable suspicion [required for a Terry stop] is a less demanding standard than probable cause [necessary for an arrest] and requires a showing considerably less

7

than preponderance of the evidence. . . . [R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." *Id.* (citations omitted).

"A traffic stop requires only reasonable suspicion to believe that a traffic violation has been committed." *United States v. Mosley*, 454 F.3d 249, 255 n.9 (3d Cir. 2006). A protective frisk must be limited to discovering whether the person is armed; it is not a general search for evidence of crime. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Thus, the frisk must generally be confined to the outer clothing, and a further intrusion under the surface of the clothing (e.g., into a pocket) must be limited to where the officer discovers evidence of a weapon upon the initial patdown. *See Terry*, 392 U.S. at 29–30. However, an officer can forgo the general patdown and can reach directly into the area where the officer has a reasonable suspicion that a weapon is stored. *See Adams*, 407 U.S. at 147–48 (permitting reach into waistband for gun); *Focareta*, 283 F. App'x. at 132 (permitting reach into pocket for gun).

In this case, Defendant Sweet pulled over Plaintiff because the radar unit indicated he was driving above the speed limit. There was clearly reasonable suspicion. As for whether Defendant Sweet had reasonable suspicion to conduct a frisk, Plaintiff argues that Defendant Sweet testified that he did not spot any weapons or otherwise perceive Plaintiff as a danger. Defendant Sweet claims that he nonetheless undertook a frisk because Plaintiff's story was suspicious. Plaintiff does not dispute that he claimed he was in the area late at night to purchase a vehicle, he was accompanied by another passenger, and the officer was alone. The Court finds that these circumstances are enough to create reasonable suspicion. Thus, the decision to pat down Plaintiff was not an unreasonable search.

Plaintiff additionally asserts that Defendant Sweet exceeded the scope of a frisk by reaching into his pant pockets, touching his private areas, and searching Plaintiff multiple times.

Defendant Sweet claims that he only conducted a standard patdown once. Defendants urge the Court to adopt Defendant Sweet's account because Plaintiff did not mention in his original Complaint or conversations with an investigative website that multiple searches took place. This is a potential incongruence for the factfinder to resolve and does not permit the Court at this juncture to adopt Defendants' version as a matter of law. Viewing the facts in the light most favorable to Plaintiff, the Court finds that a frisk where Defendant Sweet supposedly searched Plaintiff's pockets would constitute a violation of the Fourth Amendment right. Thus, the Court proceeds to analyze whether the right was clearly established.

### b. Clearly Established Law

The Supreme Court in 1968 stated that a police officer can only reach under the surface of clothing if she finds evidence of a weapon after an initial patdown. *See Terry*, 392 U.S. at 29–30. Thus, it would have been unreasonable for Defendant Sweet to believe it lawful to search Plaintiff's pockets. Qualified immunity is not a defense available to Defendant Sweet, and the claim of an unreasonable search proceeds past summary judgment.

### 2. *Seizure*

### a. Clearly Established Law

Plaintiff also alleges that Defendant Sweet executed an illegal seizure in locking Plaintiff in the backseat of his police vehicle. Under the Fourth Amendment, a seizure occurs "when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19–20 n.16. The "show of authority" test "is an objective one: Not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person" in light of all the surrounding circumstances. *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

Next, the plaintiff must also show that the seizure was unreasonable in light of the surrounding circumstances. The Supreme Court has stated that the warrantless seizure of a person for a brief investigatory detention is reasonable absent a warrant, provided the officer had "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). However, the police cannot "verify their suspicions by means that approach the conditions of arrest." *Florida v. Royer*, 460 U.S. 491, 499 (1983).

For example, there is a Fourth Amendment violation where the person is taken to a police car, transported to the police station, and placed in an interrogation room with no indication he is free to go. *Dunaway v. New York*, 442 U.S. 200, 212 (1979); *Kaupp v. Texas*, 538 U.S. 626, 631 (2003). There was also an unreasonable seizure where detectives at an airport took a person's ticket and identification before asking him to enter a room for fifteen minutes and searching his luggage. *Florida v. Royer*, 460 U.S. 491, 502–06 (1983). Furthermore, a police officer cannot detain the occupant of a residence beyond the immediate vicinity of the premises being searched. *Bailey v. United States*, 568 U.S. 186 (2013).

The parties do not dispute that Defendant Sweet conduct a patdown of Plaintiff, found no weapons, instructed him to sit on the curb, and then placed him in the back of the police car with the doors locked. Defendant Sweet claims that he moved Plaintiff so he could be safe from incoming cars while Defendant Sweet asked questions of Mr. Redfern. The Court is aware of no clearly established law that states it is unconstitutional for an officer to place a person in a vehicle for safety purposes. As the Court reviewed, the line of cases involving Terry stops prohibits officers from transporting a person to a separate interrogation location; none pronounce it unconstitutional for an officer to place someone in a car near the scene for his safety while completing the rest of the stop. Plaintiff likewise points to no such precedent. Thus, the Court

finds that Defendant Sweet could reasonably have thought his course of conduct was permissible. The claim for illegal seizure is barred by qualified immunity, and the Court grants summary judgment as to this claim.

### D. First Count — Excessive Force

#### 1. *Violation of A Right*

For a Fourth Amendment excessive force analysis, "whether there is a constitutional violation is properly analyzed under the Fourth Amendments' objective reasonableness standard." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) (internal quotation marks omitted). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397) (internal quotation marks omitted). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene; Monday morning quarterbacking is not allowed." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).

In *Graham*, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the

11

police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

It is also important to consider whether "the physical force applied was of such an extent as to lead to injury." *Mellott v. Heemer*, 161 F.3d 117, 122 (3d Cir. 1998) (quoting *Sharrar*, 128 F.3d at 822). Appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Graham*, 490 U.S. at 396) ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.). However, "[e]ven where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished." *Lamont*, 637 F.3d at 184. "The reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

In accordance with the *Graham* and *Sharrar* factors, the Supreme Court and Third Circuit have found that the force exerted was reasonable in situations where the civilian posed some threat, resisted the officers, or took off on flight. *See Estate of Smith*, 430 F.3d 140, 150 (3d Cir. 2005) (officers believed person was armed with a laser-sighted weapon); *Sharrar*, 128 F.3d at 815–16, 822 (officers were attempting to arrest four men, one of whom may have been armed); *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d Cir. 2004) (officer faced person who had charged at police cruiser); *Brosseau v. Haugen*, 543 U.S. 194, 200–01 (2004) (officers were pursuing person who fled in car). The Third Circuit has found that there is a potential excessive force claim where the officer, during a traffic stop, grabbed the plaintiff's neck and struck him twice with a flashlight, where the man was agitated but unarmed. *Green v. N.J. State Police*, 246 F. App'x 158, 161–62 (3d Cir. 2007).

Plaintiff asserts that Defendant Sweet slammed him into the side of his car, shoved his head against the door jamb, pushed and pulled him on and off the curb, and shoved his head into the door as he was placed in the police car. It is undisputed that Plaintiff was unarmed, complied with Defendant Sweet's instructions, and showed no intention of fleeing: Defendant Sweet did not uncover any weapons upon an initial patdown, and Plaintiff followed directions to exit the car, sit on the curb, and enter the police vehicle. Furthermore, Plaintiff was detained for a nonviolent offense, a traffic stop, and not placed under arrest. Viewing the facts in the light most favorable to Plaintiff, Plaintiff did not exhibit any of the uncooperative or threatening conduct present in cases where courts justified the use of force. As such, the Court finds that a reasonable factfinder could conclude that Defendant Sweet used excessive force during the December 3, 2012 stop and violated Plaintiff's constitutional rights.

2. *Clearly Established Law*

Having determined that a reasonable jury could conclude that Defendant violated Plaintiff's constitutional rights, the Court must decide whether those rights were clearly established at the time Defendant Sweet engaged in the allegedly unconstitutional conduct. The inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Court must assess whether the right was clearly established at the time the officers acted. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The Third Circuit has held that "[a] reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation" and is not entitled qualified immunity if he unreasonably applied the factors. *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005).

13

Defendant Sweet stopped Plaintiff on December 3, 2012. In 2012, the *Sharrar* factors, as well as the Supreme Court and Third Circuit cases cited above, *see supra* Section III.D.1, clearly established that shoving a person's head and body against a vehicle multiple times constitutes excessive force, where the person was detained for a nonviolent offense, determined to be unarmed, and cooperated. Thus, Defendant Sweet should have known that such actions were unlawful. Defendant Sweet is not entitled to qualified immunity, and the Court denies the motion for summary judgment against the First Count.

> E. **Second Count — Race Discrimination**

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but rather a direction that all persons similarly situated be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976), or any other suspect classification. To make a claim of selective enforcement under the Equal Protection Clause, a plaintiff must prove that the defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977). A showing of discriminatory effect requires a showing that the plaintiff was a member of a protected class, and that he was treated differently from those similarly situated who were not in that protected class. *Bradley v. United States*, 299 F.3d 197, 205–06 (3d Cir. 2002). In racial profiling cases, where discriminatory purpose may be hard to prove, "statistical evidence of discrimination may be the only means of proving a discriminatory effect." *Id.* at 206.

In this matter, Plaintiff provides no evidence speaking to the treatment of members outside his class or statistical evidence of discrimination. He thus fails to meet the burden of proffering some evidence from which a jury could find a discriminatory effect. As a result, the Court grants the Motion for Summary Judgment as to the claim under the Equal Protection Clause.

### F. Third Count — Retaliation

Plaintiff also brings a retaliation claim under the First Amendment. However, he presents no evidence supporting the claim beyond the allegations in the pleadings, neither in the Statement of Undisputed Material Facts nor its Opposition Brief. Because Plaintiff bears the burden of proving the First Amendment claim at trial and has presented no evidentiary support, the claim cannot survive summary judgment. The Court grants Defendants' Motion as to the Third Count.

### G. Fourth Count — *Monell*

To hold a city liable under section 1983, the plaintiff must demonstrate that her rights were violated by a policy or custom of the city and that such policy or custom has been "the moving force" behind the deprivation of her constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691. Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" that will trigger liability under section 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a

plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). In general, a municipality may be liable under section 1983 if it tolerates known illegal conduct by its employees. *Id.* In such circumstances, it can be said to have a custom that evidences deliberate indifference to the rights of its inhabitants if: (1) policymakers were aware that municipal employees had deprived others of certain constitutional rights; (2) it failed to take precautions against future violations; and (3) this failure led, at least in part, to the plaintiff's suffering the same deprivation of rights. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

### 1. Failure to Train

Plaintiff alleges that Defendant Brigantine failed to properly train its officers. However, he furnishes no support that Defendant Brigantine was aware of a pattern of similar constitutional violations committed by its untrained employees. He relies solely on portions of the expert report authored by Rivera that summarily conclude that inadequate training was a cause of Defendant Sweet's decision to detain Plaintiff for an unreasonable duration of time. Such statements do not constitute evidence of previous, similar incidents based on which Defendant Brigantine knew or should have known that its course of training was inadequate. Thus, no reasonable factfinder could find Defendant Brigantine liable under *Monell* for a failure to train.

## 2. *Failure to Investigate*

In *Beck v. City of Pittsburgh*, the Third Circuit recognized that a section 1983 claim for damages against a municipality could survive summary disposition where the plaintiff offered evidence suggesting that the municipality's chief law enforcement policymaker knew about and acquiesced in a custom that tolerated the use of excessive force by city police officers. 89 F.3d 966 (3d Cir. 1996). Specifically, the plaintiff offered into evidence a series of detailed excessive force complaints against the defendant police officer who had allegedly injured plaintiff. The Court found the introduction of these records sufficient "for a reasonable jury to infer that the Chief of Police of Pittsburgh . . . knew, or should have known, of [the defendant officer's] violent behavior in arresting citizens." *Id.* at 973. That is, because the officer had allegedly used excessive force on numerous occasions in the past before allegedly using such force against the plaintiff in *Beck*, there arose disputed issues of fact whether an informal policy of acquiescence existed and whether it had caused the plaintiff's alleged injuries. Accordingly, the Third Circuit panel reversed the trial court's grant of judgment as a matter of law in favor of the defendant municipality. *Id.* at 976.

Since the *Beck* decision, trial courts in this Circuit have grappled with the issue of what type of evidence a plaintiff must adduce in support of a *Monell* municipal liability claim under section 1983 in order to survive summary judgment. For instance, statistical evidence alone, "isolated and without further context," generally "may not justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985)). Instead, if a plaintiff wishes to rely principally on statistics showing the frequency of excessive force complaints and the rate at which those complaints are

17

sustained, she must show why those prior incidents were wrongly decided and "how the misconduct in those cases is similar to that involved in the present action." *See Franks v. Cape May Cty.*, No. Civ. 07-6005, 2010 WL 3614193, at *12 (D.N.J. Sept. 8, 2010). One way to do this would be to show, as was done in the *Beck* case, that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints in the past. *See Beck*, 89 F.3d at 975; *see also Garcia v. City of Newark*, No. Civ. 08-1725 (SRC), 2011 WL 689616, at **3–5 (D.N.J. Feb. 16, 2011) (denying defendant municipality's motion for summary judgment on plaintiff's section 1983 claim when plaintiff presented evidence that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue in that case).

Plaintiff asserts that expert Rivera found multiple errors in how Defendant Brigantine investigated Plaintiff's complaint. Plaintiff, however, provides no facts regarding how the City handled past complaints regarding Defendant Sweet. Nor does Plaintiff show that the city failed to institute a formal system for tracking complaints. In absence of any indication that Defendant Brigantine knew of similar past incidents, a reasonable jury could not find that the City had an informal policy of authorizing or condoning Defendant Sweet's actions. Accordingly, the Court grants Defendants' Motion for Summary Judgment on the failure to investigate claim under *Monell*.

## IV. CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment is **GRANTED IN PART**.

Dated:   5/2/2017                                                                                              s/ Robert B. Kugler
                                                                                                                            ROBERT B. KUGLER
                                                                                                                            United State District Judge